STATE OF SOUTH CAROLINA  )
                                )      **LAND PURCHASE AGREEMENT**
COUNTY OF YORK          )

THIS LAND PURCHASE AGREEMENT (hereinafter this "Agreement") made and entered into by and between **GOLD HLL ENTERPRISES, LLC,** hereinafter referred to as "Seller", **FORT MILL SCHOOL DISTRICT NO. 4,** hereinafter referred to as "Buyer", and **SYNOVUS BANK,** hereinafter referred to as "Judgment Holder" in Civil Action 2010CP46-3148.

**WITNESSETH:**

**WHEREAS,** Seller is the owner of the Property as described hereinbelow;

**WHEREAS,** Buyer desires to purchase and Seller desires to sell the hereinafter described Property under the terms and conditions of this Land Purchase Agreement; and,

**WHEREAS,** Synovus Bank is the holder of a Judgment of Foreclosure and Sale encumbering the Property (as defined below).

**NOW THEREFORE,** in consideration of the premises and of the mutual promises and covenants herein contained the Seller and Buyer agree as follows:

1.    The Property. The Seller agrees to sell and the Buyer agrees to purchase the real estate described as follows:

> All those certain parcels or tracts of land shown as 2.92 acres on Survey drawn by Pittman Professional Land Surveying (attached hereto) being the western portion of York County Tax Map #716-00-00-072, in Fort Mill Township, York County, South Carolina on Deerfield Drive (hereinafter, "Tract #1"); and +/- 10-14 acres located generally to the east of Baldor Electric (Tax Map #716-00-00-054) property, however containing a strip of property located to the south and west of Baldor property, said strip of property adjoining right-of-way for Deerfield Drive (hereinafter, "Tract #2"); being hereinafter referred to as "**the Property**" or "Seller's Property."

The Property shall include all buildings and improvements located thereon except as expressly provided herein. Seller agrees to convey rights-of-way for the construction and maintenance of driveways as needed by Buyer as a material provision of this contract and to survive the closing. The Parties agree to the insertion of the exact legal description of the tracts be appended by executing an Addendum for that purpose.

EXHIBIT A

2. _Purchase Price_. The purchase price for Tract #1 (2.92 acres) of the Property shall be **TWO MILLION NINE HUNDRED THOUSAND ($2,900,000) DOLLARS** and the purchase price for Tract #2 (+/- 10-14 acres) of the Property shall be **FOUR HUNDRED EIGHTY THOUSAND ($480,000) DOLLARS.**
The Purchase Price shall be payable as follows:

   a. **TWENTY-FIVE THOUSAND DOLLARS ($25,000)** as the refundable earnest money deposit ("Binder Deposit") which sum shall be paid directly to the Settlement Agent, Wilson Law Firm, within three (3) business days upon execution of this Agreement by Buyer, it being understood that the deposit may be used by Seller for whatever purpose Seller determines, and shall not be held in escrow pending closing; and,

   b. **THE BALANCE** due and payable at closing by certified or cashier's check for Tract #1 and the entire amount for Tract #2 shall be credited as a gift by Seller to Buyer with a gift value of $480,000. The two tracts must be purchased together or not at all.

3.   _Closing_. **The consummation of the sale and purchase of the Property hereunder (the "Closing") shall take place no later than 5:00 p.m. (Eastern Standard Time) on or before April 26, 2011.** "Closing" shall be defined as delivery by Seller to Buyer (or Buyer's attorney) of the deed, and receipt by Seller of Seller's net proceeds from the transaction. The Closing shall be held at a mutually convenient time in the offices of Wilson Law Firm, Fort Mill, South Carolina, and exclusive possession of the Property shall be delivered to Buyer at Closing. The closing date shall automatically be extended by up to ten days, if Buyer fails to close for any reason on April 26, 2011.

4.   Buyer's Pre-Closing Access to the Property, the "Examination Period". From the date of execution of this Agreement, the "_Examination Period_", and until closing date, Buyer and its agents and authorized representatives shall have full and complete access to the Property and shall be entitled to enter upon the Property to conduct and complete investigations, inspections, studies, surveys, tests and measurements, provided, however, that such activities do not result in any material adverse change to the physical characteristics of the Property. If the Buyer fails to receive approval from the South Carolina Department of Education – Office of School Facilities, and the South Carolina Department of Transportation, and if Buyer fails to procure what it deems in its sole subjective opinion to be a satisfactory survey of the Property, or if Buyer deems the acquisition of the Property not to be in its best interest, then Buyer shall receive a full refund of its Binder Deposit and this Contract shall be void. The matters which must occur within the Examination Period are: (1) Survey; (2) Verification of acceptable soil conditions and/or environmental report; (3) acceptable topographic survey; (4) approval by SCDOT & SCDOE; and (5) final approval by Fort Mill School District Board of Trustees to close. If any one of these matters is not satisfactory to the Buyer, then this Agreement is voidable at the option of the Buyer on or before the Closing.

4. <u>Conveyance of Property</u>. Fee simple title to the above-described Property shall be conveyed to the Buyer by a duly executed and acknowledged general warranty deed, in proper form for recording, containing a complete description of the property according to the Current Survey of the Property. Title shall be conveyed to the Buyer free and clear of any and all liens, security agreements, pledges and other encumbrances, except for ad valorem taxes for the year of Closing and thereafter (Seller shall credit Buyer at closing to be prorated as of the Closing date using 2010 tax amounts in full settlement of its 2011 tax liability on the Property, if any), utility easements of record, and any other previously existing matters of public record. If any lien exists, it shall be satisfied in full before conveyance to the Buyer or at Closing. Seller shall promptly notify Buyer, at or prior to Closing, to any claims to, or of any such lien or other encumbrances on, the Property, or of any threats or notices of intention to condemn all or any part of the Property made known to the Seller prior to Closing and which are not disclosed in copies of a proposed title commitment as provided to Seller by Buyer prior to Closing. The Seller shall procure the release of the Property from any and all obligations to pay any fees, dues, liens, assessments or any other monetary amounts to another, including, but not limited to property owner associations, community associations, management fees, common area maintenance fees and any and all other fees to another incident to the Property.

5. <u>Closing Costs</u>. Seller shall furnish and pay the expense of preparation of the Deed, the transfer fee imposed under the South Carolina Deed Recording Fee Act or any other documentary or transfer tax stamps, and the fees and costs of Seller's own attorney. Seller shall also be responsible for, and discharge prior to Closing, all assessments (special or otherwise), rollback or deferred taxes and charges placed against or applicable to the Property due and payable prior to Closing. All assessments, taxes and charges for the current calendar year shall be pro-rated between Buyer and Seller at Closing based upon the date of Closing. Seller shall provide a boundary survey of the Property sufficient for recording and for the purpose of conveying the Property to Buyer. Buyer shall pay for the expense of filing the Deed, the cost of any additional survey work, including but not limited to an as-built survey or additional work required by any lender, representative of Buyer, or any other third party acting through or on behalf of Buyer, the title insurance premium for coverage provided by the title company insuring Buyer's title to the Property and the fees and costs of Buyer's own attorney.

6. <u>Brokerage Fees</u>. The Buyer shall be solely responsible for the payment of any real estate commission. Each party hereto agrees to indemnify and hold harmless the other party for any claim of commission by others arising by, through or on account of the acts of such party.

7. <u>Deposit</u>. Buyer has paid and delivered, or shall pay and deliver pursuant to the provisions of Paragraph 2 above, to Seller the amount set forth in Paragraph 2 as an earnest money/binder deposit and down payment of the Purchase Price (the "Binder Deposit").

8. <u>Buyer Responsible for All Development Costs</u>. Buyer shall be solely responsible for payment of future water and sewer tap fees, and all building or development impact fees applicable to development and construction on the Property.

9. <u>Representations, Warranties, and Agreements of Buyer</u>. Buyer represents, warrants and agrees that it has the requisite corporate authority to enter into this transaction and carry out the terms and conditions of this Agreement.

10. <u>Representations, Warranties, and Agreements of Seller</u>. Seller represents, warrants and agrees that:

A. To the best of Seller's knowledge, there is no suit or legal action or legal, administrative, condemnation, arbitration or other proceeding pending, or to the knowledge of Seller, threatened against the Seller which might materially affect the Property or the operation of the Property or which might prevent the consummation of this Agreement, except for: 1010CP46-2291, 2010CP46-3148, 2010CP46-2292, 2010CP46-2293 and the redemption of the tax sale.

B. From and after the date of this Agreement and prior to the Closing or termination of this Agreement, Seller will not cut any trees or shrubs, grade any surface or otherwise materially alter any of the Property (or enter into any agreement with respect thereto) without the prior written consent of Buyer.

C. Seller has no knowledge and has received no notice of any encumbrances or special assessments, either pending or confirmed, for road, sidewalk, paving, water, sewer or other improvements on or adjoining the Property.

D. Seller agrees to provide at Closing the following affidavits and documents as customarily required of corporate Sellers within the State of South Carolina:

(1). An executed owner's affidavit or other documents as customarily required by title insurance companies within the State of South Carolina as necessary for issuance of a final title insurance policy in favor of Buyer with affirmative coverage against the possible lien claims of mechanics, laborers and materialmen. Additionally, Seller shall discharge in full any and all such indebtedness at or before the Closing.

(2). An executed affidavit certifying under penalty of perjury in a form approved under regulations promulgated pursuant to Section 1445 of the Internal Revenue Code of 1986, as amended, that it is not a "foreign person" which would subject Buyer to the withholding tax provisions of said Section 1445.

(3). Documents as may be reasonably required by Buyer's attorney for certification of the right, power and authority of Seller's designated representatives to execute and deliver the closing documents and consummate the sale of the Property.

11. <u>Remedies on Default: Treatment of Binder Deposit and Remedies</u>.

(A) *Buyer's Default*. In the event that the terms and conditions of this Agreement have been satisfied by Seller and Buyer fails to perform in accordance with the terms and conditions herein, including the refusal or inability of Buyer to settle or close on this Agreement within the time limits herein set forth, Seller, as Seller's sole and exclusive remedy, shall be entitled to declare this Agreement canceled and the one dollar shall be retained by Seller as full liquidated damages, and the parties hereto shall have no further rights, obligations or liabilities with respect to each other hereunder.

(B) *Seller's Default*. In the event that Seller is unable, subsequent to the date of Closing determined by Paragraph 3 and after exerting reasonable and good faith effort, to convey title to the Property or to deliver or comply with any other item herein required of Seller at Closing or to otherwise perform pursuant to the terms of this Agreement, Buyer shall have the right and option to terminate this Agreement upon written notice to Seller and receive back from Seller the full amount of the Binder Deposit free of any accrued interest, and upon the return of same, the parties hereto shall have no further rights, obligations or liabilities with respect to each other hereunder. Should Seller unilaterally elect, or be unable due to matters and circumstances within its control, to convey title to the Property or to deliver or comply with any other item herein required of Seller at Closing or to otherwise perform pursuant to the terms of this Agreement, Buyer shall additionally have the right and option to demand and compel by legal proceedings (including specific performance) full compliance with the terms of this Agreement, including without limitation, the immediate conveyance of the Property by Seller or the right to money damages in the event another Property is utilized to cover Seller's default in the event of Seller's willful non-compliance. The above remedies shall be Buyer's sole and exclusive remedies in the event of Seller's Default.

(C) *Liquidated Damages*. One dollar liquidated damages has been agreed upon by Seller and Buyer after due deliberation and discussion, and the same constitutes a good faith estimate of the damages of the Seller which would be entitled thereto pursuant to this Agreement, the Seller's actual damages being difficult, if not impossible to ascertain.

12. *Indemnifications by Buyer*. Buyer agrees to indemnify, defend and hold Seller, its officers, employees, and agents harmless from and against any and all claims, demands, liabilities, loss and expenses (including, but not limited to, reasonable attorney fees), damages, losses, causes of actions and/or suits of any nature whatsoever arising out of or related to: (i) ownership and operation of the Property by Buyer subsequent to Closing; (ii) any claims based on the actions of Buyer prior to the Closing Date in connection with Buyer's inspections of the Property; (iii) any breach of representation or warranty or any other provision, warranty or covenant in this Agreement by Buyer or in any document delivered at Closing to Seller pursuant to this Agreement; or (iv) any other matter for which Buyer has indemnified Seller under this Agreement.

13. *Indemnifications by Seller*. Seller agrees to indemnify, defend and hold Buyer, its officers, employees and agents harmless from and against any and all claims, demands, liabilities, loss and expenses (including, but not limited to, reasonable attorney fees),

damages, losses, causes of actions and/or suits of any nature whatsoever arising out of or related to: (i) ownership and operation of the Property by Seller prior to Closing; (ii) any breach of representation or warranty or any other provision, warranty or covenant in this Agreement by Seller or in any document delivered at Closing to Buyer pursuant to this Agreement; or (iii) any other matter for which Seller has indemnified Buyer under this Agreement.

14. <u>Representations, Warranties and Covenants of Parties at Closing</u>. All representations, warranties and covenants of Buyer and Seller contained in this Agreement are conditions precedent to the performance by them of their obligations hereunder and shall be true in all material respects at Closing, as though such representations, warranties and covenants were made at Closing.

15. <u>Notices</u>. All notices, requests, or other communications required or permitted to be given hereunder shall be in writing and shall be either (i) delivered by hand, (ii) mailed by United States registered mail, return receipt requested, potage prepaid, (iii) sent by a reputable, national overnight delivery service (e.g., Federal Express, UPS, Airborne, etc.) Or (iv) sent by facsimile (with the original being sent by one of the other permitted means or by regular United States mail) and addressed to each party at the applicable address set forth herein. For purposes of this Agreement, notice shall be deemed given on the date by which it was actually received by the intended party.

Seller(s): Gold Hill Enterprises, LLC
P.O. Box 1435
Fort Mill, SC 29716
Facsimile: david.jennings@duke-energy.com
Email:
With a copy to:
B. Bayles Mack, Esq.
P.O. Box 128
Fort Mill, SC 29716
Email: mackandmack@comporium.net

Buyer: Fort Mill School District #4
120 East Elliott St.
Fort Mill, S.C. 29715
Attention: Dr. James N. Epps, Jr., Superintendent

Facsimile: (803) 547-4696
Email: eppsc@fmsd4.fort-mill.k12.sc.us
With a copy to:
Brian C. Wilson, Esq.
9351 Founders St.
Fort Mill, S.C. 29708
Facsimile: (803) 548-1990
Email: bcw@comporium.net

16. <u>Miscellaneous</u>. This Agreement shall be binding upon and shall inure to the benefit of Seller and Buyer, their respective successors, successors-in-title, legal representatives, heirs and assigns. Seller and Buyer agree that this Agreement shall be governed and construed by the laws of the State of South Carolina. In the event any provision hereof is held to be invalid or unenforceable, such invalidity or unenforceability shall not affect the validity or enforceability of any other provision hereof. <u>This Agreement, including subsequent Addendum, if any, per Paragraph #1, contains the entire agreement of the parties hereto with respect to the subject matter hereof, and no representations, inducements, promises or agreements, oral or otherwise, not expressly set forth herein shall be of any force or effect.</u> This Agreement may not be modified except by written modification, executed by all parties hereto. Seller reserves the right to assign its interests and obligations with respect to this Agreement to any other party without the prior consent of Buyer. Buyer may assign its rights under this Agreement only with the Seller's prior written consent. All titles or captions of the paragraphs set forth in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit, extend or describe the scope of this Agreement, or the intent of any provision hereof. Two (2) originals of the Agreement shall be executed, each of which shall be deemed an original. One original each, upon complete execution, shall be given to Seller and Buyer.

17. <u>Agreement to release Property.</u> Synovus Bank agrees to release the Property (as defined in paragraph #1, including subsequent Addendum, if any) in exchange for the payment of net sales proceeds which is estimated to be $2,900,000 less tax proration credit, less redemption of property sold at tax auction, less recording costs, and less Seller's ordinary and customary legal fees incident to this sale. Synovus Bank may assign its interest to another, who shall be equally bound by this Agreement.

17. <u>Revocation and Acceptance of Offer and Agreement</u>. Seller has executed this Agreement as of this 4/4/11 day of April, 2011, as an offer of sale to Buyer, on the terms and conditions as stated herein.

**IN WITNESS WHEREOF**, the Buyer herein, has caused this Agreement to be duly executed this _____ day of JApril, 2011.

WITNESS:                                    BUYER:

                                            FORT MILL SCHOOL DISTRICT NO. 4

/s/ Patricia D. Pettus                      By: /s/ James N. Epps, Jr.
                                            James N. Epps, Jr., its Superintendent

**IN WITNESS WHEREOF**, the Seller herein, has caused this Agreement to be duly executed as of the __4th__ day of April, 2011.

WITNESS:                                             SELLER:
                                                     GOLD HILL ENTERPRISES, LLC

_[signature]_                                        by: _David W. Jennings_

                                                     By: _David W. Jennings_
                                                     Manager-Member Gold Hill Enterprises

**IN WITNESS WHEREOF**, the Judgment Holder herein, has caused this Agreement to be duly executed as of the ____ day of April, 2011.

WITNESS:                                             JUDGMENT HOLDER:
                                                     SYNOVUS BANK

_____                       by:_____

                                                     By:_____