# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Gold Hill Enterprises, LLC, | ) | Case No. 11-02458-hb |
| | ) | |
| Debtor. | ) | |

## DISCLOSURE STATEMENT

Filed by the Debtor-in-Possession, Gold Hill Enterprises, LLC
on July 12, 2011

**Table of Contents**

**Page**

I. INTRODUCTION ---------------------------------------------------------------------- 2

II. FINANCIAL DATA, PROPERTY AND HISTORY OF THE DEBTOR --------- 3

III. AVOIDANCE ACTIONS ------------------------------------------------------------- 14

IV. SUMMARY OF PROPOSED PLAN ----------------------------------------------- 15

V. FEASIBILITY OF PROPOSED PLAN --------------------------------------------- 15

VI. CONCLUSION ------------------------------------------------------------------------ 15

# I. INTRODUCTION

Gold Hill Enterprises, LLC, the debtor-in-possession (the "Debtor", "Gold Hill" or the "Company") in the above-captioned case (the "Chapter 11 case"), provides this Disclosure Statement (the "Disclosure Statement") to all of its known creditors pursuant to §1125 of the United States Bankruptcy Code (11 U.S.C. §101 et seq. [the "Bankruptcy Code"]). The purpose of the Disclosure Statement is to provide such information as may be deemed material, important, and necessary for the creditors of the Debtor to make a reasonably informed decision in exercising their right to vote on the Plan of Reorganization of the Debtor (the "Plan"). The Plan was filed by the Debtor simultaneously with this Disclosure Statement.

EXCEPT WHERE SPECIFICALLY STATED OTHERWISE, THE DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTORS AND HAS BEEN PREPARED BASED ON INFORMATION AVAILABLE TO THE DEBTORS. NO REPRESENTATIONS CONCERNING THE DEBTORS (PARTICULARLY AS TO THE FUTURE BUSINESS OPERATIONS OR THE VALUE OF ASSETS OF THE DEBTORS) ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY.

The Plan represents a legally binding arrangement and should be read in its entirety, as opposed to relying on the summary in this Disclosure Statement.

Various classes under the Plan are shown as impaired. Impairment is defined to mean any change in the terms of the contracts or agreements between the Debtor and creditors, which alters the terms of the agreements between the parties.

Bankruptcy Court approval of the Disclosure Statement does not constitute approval by the Bankruptcy Court of the Plan itself.

No securities will be issued pursuant to the Plan.

No Unsecured Creditors' Committee was appointed in this case.

The Court will set a date for a hearing on the acceptance of the Plan. At the time that the confirmation hearing is set, all creditors and parties in interest will be asked to vote on the Plan by completing the Ballot.

For a Plan to be confirmed, at least one impaired class must vote in favor of the Plan. A class is deemed to have voted in favor of the Plan if more than 50% of the members voting in that class cast a ballot in favor of the Plan, and at the same time, two-thirds (2/3) or more of the dollar amounts owed to creditors voting in that class also vote affirmatively in favor of the Plan. In other words, for a class to have voted in favor of the Plan, at least a majority of the voters and two-thirds of the dollars of the votes owed to the class must have voted in favor of the Plan.

## II. FINANCIAL DATA, PROPERTY AND HISTORY OF THE DEBTOR

### A. Pre-Petition History of the Debtor

#### i. General Information

Gold Hill was formed in 2004 for the commercial development and sale of real property in York County owned by Gold Hill (the "Property"). The Property is located approximately four (4) miles north of Fort Mill, South Carolina, and eleven (11) miles south of the central business district of Charlotte, North Carolina, in the southeastern quadrant of Gold Hill Road and Interstate I-77. The Property is contained within the development plan of Gold Hill Commons, which is a mixed-use development. Immediate uses of the surrounding land include the Charlotte Knights Stadium (Knights Castle), Daimler Trucks of North America Offices, Sunbelt Corporate Headquarters, Carolinas Medical Center Office, and former Baldor Electric Company Office. Once complete, Gold Hill Commons will be a large-scale, mixed use development that will include retail, office and residential uses.

David Jennings and Kathryn Jennings (the "Jennings") inherited the Property from their parents. The Jennings originally held the Property as part of Jennings Enterprises, a general partnership which they own 50/50. In 2004, the Jennings entered into a business relationship with a third individual, R. Shawn Helda ("Helda"), to form Gold Hill in order to develop and sell some of the land. As a result, Jennings Enterprises transferred a portion of its real property to Gold Hill, while maintaining the rest of its property in the name of Jennings Enterprises, which property is adjacent to that of Gold Hill. The members of Gold Hill are as follows:

3

        David Jennings                             25%

        Kathryn Jennings                       25%

        Helda Enterprises International, LLC     50%

The Debtor currently owns 4 graded pad ready sites (pads for 21,000 square foot building, 13,124 square foot building, 13,140 square foot building, and 20,000 square foot building) on approximately 4.93 acres; a 5.69 acre parcel that is pad-ready for a 65,992 square foot building; and approximately 79 acres of rough graded land, approximately 14 acres of which is designated open space. The property is zoned PD, Planned Development, by York County.

### ii.      **Challenges Faced by the Debtor Pre-Petition**

The development of Gold Hill Commons launched in 2007, just as the economy, and in particular the demand for real estate, began to plummet across the country. Thus, the development as a whole failed to gain momentum, brought about by the challenging economic conditions.

These global challenges were exacerbated by the management structure of Gold Hill and the control by Helda over the business operations. Per the Operating Agreement for Gold Hill, there were three managers: David Jennings, Kathryn Jennings, and Helda. The actions of the company required the consent of two managers, one of whom had to be Helda. In addition, Helda's company, Corinthian International, Inc. ("Corinthian"), was the designated developer. Helda became the contact person for sales, marketing, and development. With Helda's consent required and the control he had over the development, the Jennings were unable to guide the company in the direction they thought was necessary to succeed with real estate sales. The Jennings believed that Helda priced the property too high for the market, and Gold Hill was unable to secure needed sales.

**Synovus Bank and Helda**

In connection with the development of the property, Gold Hill entered into two loans with NBSC (now Synovus Bank) (the "Bank") in 2007, secured by a mortgage. Helda, through his companies, also entered into loans with the Bank secured by property that he owned in the same area. Likewise, Jennings Enterprises had previously entered into loans with the Bank secured by property owned by Jennings Enterprises. Thus, the Bank held mortgages over virtually all of the real property comprising Gold Hill Commons.

In the summer of 2009, Helda proposed auctioning property in Gold Hill Commons, including property owned by Helda through his company, Gold Hill, and Jennings Enterprises. The Jennings consented to the auction, but designated reserve prices for most parcels. The Bank knew about the proposed auction and indicated that it would release the parcels to the winning bidders. However, when the auction was held in late September 2009, the Jennings discovered that Helda changed the auction of several parcels from "reserve" to "absolute", thus removing minimum pricing on many of the parcels. As a result, the winning bids were low, and the Bank refused to release the parcels. In May of 2010, three law suits were instituted by auction bidders against Gold Hill, Jennings Enterprises, and Helda's companies for failure to close on the sales pursuant to the auction.

Regular payments to the Bank were being made on the Gold Hill loans until the latter part of 2009, when the Jennings discovered that Helda had ceased payments to the Bank. When the Jennings discovered that the loans were delinquent, they attempted to resume payments. However, the Bank had already accelerated the balance due on the notes, and would not accept partial payments.

Helda had already defaulted on his loans with the Bank. The Bank asked the Jennings to cross-collateralize the Jennings Enterprises property with Helda's property, even though the Jennings were not obligated on Helda's debt to the Bank. The Jennings negotiated a resolution with the Bank which included the cross-collateralization of the property, but Helda would not agree.

Discussions were continuing with the Bank in an attempt to reach a consensual resolution, and the Bank indicated that it would work with Gold Hill if Helda were removed as a manager. The Jennings then began discussions with Helda for his removal from Gold Hill. This resulted in protracted litigation in federal court in an attempt to judicially dissolve Gold Hill, and included claims against Helda for breach of fiduciary duty. Meanwhile, the Bank foreclosed on Helda's property. The business operations of Gold Hill continued to deteriorate as attention was focused on the litigation. The Jennings and Helda were finally able to reach a settlement agreement which would result in the removal of Helda as a manager, and would result in the removal of Helda's company as a member of Gold Hill. However, the agreement required the Bank's consent, which the Bank failed to give.

5

The Bank instituted foreclosure proceedings against Gold Hill in July 2010. Although Gold Hill and the Jennings continued to try to negotiate with the Bank, they were not able to reach an agreement. A foreclosure hearing was held on December 9, 2010, finding in favor of the Bank. Because the parties were continuing to negotiate a resolution, the court delayed entry of the order until December 30, 2010. The judgment ordered the sale of the property by a public foreclosure sale, and ordered that a deficiency judgment would be entered after the sale, based on the total amount due of $6,335,101.16.

In January of 2011, Gold Hill received an offer from Fort Mill School District No. 4 (the "School District") for the purchase of two buildings and adjacent unimproved land for the purchase price of $2,900,000 (the "School District Sale"). Although the sale would substantially reduce the balance due to the Bank, the Bank would not consent to the sale and would not delay the foreclosure of the property.

The foreclosure sale was held on April 4, 2011, at which the Bank entered a credit bid on the property in the amount of $5,193,000. Because deficiency was requested, the sale was not final that day, and instead was held open for thirty (30) days.

Before the expiration of the thirty (30) days, on April 14, 2011, Gold Hill filed its petition for bankruptcy relief under Chapter 11. Gold Hill filed a Notice of Sale on the same day seeking authorization of the proposed sale to the School District.

**Fifth Third Bank**

Fifth Third Bank ("Fifth Third") made a loan to Gold Hill in 2004 pursuant to a note dated October 5, 2004, in the original principal amount of $4,518,750.00 (the "2004 Loan"), secured by a mortgage on a 12.04 acre parcel. Fifth Third subsequently entered into a new loan on July 6, 2006, in the principal amount of $950,000 (the "2006 Note"). The mortgage was amended to additionally secure the 2006 Note.

The 2004 Note was eventually paid in full, and the Jennings thought the mortgage had been satisfied. However, the Jennings discovered later that the mortgage had not been satisfied. The mortgage securing the 2006 Note remains on record for the remaining 5.69 acres of this parcel (the "Fifth Third Parcel").

6

Fifth Third brought an action against Gold Hill in North Carolina for judgment on amounts allegedly due on the 2006 Note, and subsequently brought an action for foreclosure of the mortgage in South Carolina. Gold Hill answered both complaints and raised defenses that the documents that presumably authorized Gold Hill to enter into the loan with Fifth Third were not properly executed pursuant to the corporate requirements, and the loan documents themselves were not properly executed by two managers of Gold Hill as required by the Operating Agreement.

The parties had scheduled mediation to attempt to resolve the issues just prior to the bankruptcy filing by Gold Hill.

### B. Post-Petition Events

Just prior to filing the Chapter 11, and in order to obtain corporate authority to do so, the Jennings were able to reach an agreement with Helda which resulted in a corporate resolution granting management authority to the Jennings during the course of the bankruptcy. This change in the management has enabled the Debtor to avoid prior complications that were encountered with the management structure that was previously in place.

Upon filing its petition for Chapter 11 relief, the Debtor filed a Notice of Sale for approval of the proposed sale to the School District. The sale was approved on April 22, 2011 and closing took place on May 26, 2011. As a result of the sale, York County Tax Collector, which was scheduled as a secured creditor on the bankruptcy schedules, was paid in full ($217,653.80). The Bank received $2,662,440.20 from the sale proceeds, substantially reducing the outstanding balance due to the Bank.

Although the Bank indicated prior to the bankruptcy that it would not consent to the sale to the School District, the Bank did give its consent to the sale at the hearing on the sale before the Bankruptcy Court. The Debtor has scheduled the Bank's claims as disputed, and believes that the Bank has liability exposure due to its actions pre petition. However, the Debtor has examined the cost of pursuing such an action against the Bank, and believes that it will be more cost effective to pay the Bank in full through the provisions of the Plan. The Debtor reserves the right to pursue an action against the Bank in the event the Plan is not approved.

7

The Debtor has instituted an Adversary Proceeding against Fifth Third to determine the validity of Fifth Third's claim and lien. The Debtor has also filed an objection to the Proof of Claim filed by Fifth Third. The Debtor believes that it will prevail against Fifth Third due to the inadequacy of the corporate authority for the Fifth Third loan, and due to the legal invalidity of the loan documents.

Although the Debtor believes that it may have certain causes of action against Helda and/or HEI, the Debtor has decided not to pursue them at this time because Helda and HEI appear to be judgment proof and the Debtor believes it will be more cost effective to pay Helda and HEI as a Class 6 creditor pursuant to the provisions of the Plan. The Debtor reserves the right to pursue an action against Helda and/or HEI in the event the Plan is not approved.

Gold Hill has engaged in extensive marketing and has employed The Keith Corporation to assist with this process. Pricing has been adjusted to reflect current market conditions.

Prior to engaging The Keith Corporation, Gold Hill entered into discussions with an interested buyer for the potential purchase of approximately 20 acres. On or about July 5, 2011, the Debtor received an offer. This offer to purchase is for approximately 20 acres at the price of $95,000 per acre, plus designated open space, for a total purchase price of approximately $1,900,000. The terms require a 60-day due diligence period, with a 15% down payment made no later than September 30, 2011, and seller financing at 7% interest for one year, with a lump sum payment to be made on or before one year after the down payment is made. The Debtor is filing a Notice of Sale for the approval of this sale.

During the Chapter 11, the Debtor has fulfilled all of its obligations as a Debtor in Possession, including the establishment of its post petition bank account, the filing of insurance reports, the attendance at the initial debtor interview with the U.S. Trustee, and all other requirements. It has provided substantial information regarding its assets and liabilities, including information provided at the hearing pursuant to 11 U.S.C. §341.

The Debtor's only source of income is through the sale of real estate, and the Debtor has received gifted funds from Kathryn Jennings and Jennings Enterprises, post petition, to fund essential expenses during the Chapter 11.

### C. Executory Contracts

The Debtor had a pre petition development contract with Corinthian International, Inc. ("Corinthian"), but this contract was breached by Corinthian prior to the bankruptcy filing and was terminated pre petition. Also pre petition, the Debtor reached a settlement agreement in the Helda Litigation with Helda Enterprises International, LLC ("HEI") and Helda for their removal as member and manager, respectively, from the Company. The settlement agreement has not been consummated. However, HEI, Helda, and the Jennings entered into a Resolution and Amendment to the Operating Agreement of Gold Hill prior to the bankruptcy filing ("Gold Hill Resolution") which gave the Jennings the right to manage Gold Hill, such that Helda's consent is not required for management decisions unless Gold Hill enters into a contract for the sale of property for less than $60,000 per acre. The management by the Jennings shall continue upon these terms until the indebtedness to the Bank and Fifth Third, as applicable, have been satisfied.

Pre petition, the Debtor had a contract for sale with Fort Mill School District No. 4, which contract was fulfilled with the sale that was approved by the Bankruptcy Court on April 22, 2011.

The Debtor rejects all executory contracts, with the exception of the Gold Hill Resolution.

### D. Employment of Professionals

The following professionals have been approved by the Court, for the following purposes:
(1) Barton Law Firm, P.A. as counsel for the Debtor.
(2) B. Bayles Mack as special counsel in connection with real estate closings for the Debtor.
(3) The Keith Corporation as marketing and listing agent for the Debtor.

In addition, the Debtor has filed an application for approval of Robert Palmer & Associates as tax accountant for the Debtor. This application is pending approval of the Court as of July 12, 2011.

### E. Assets and Liabilities of the Debtor

#### 1. Assets

9

This is a single asset real estate case. The real estate consists of a mixed-use development which contains some pad-ready parcels as well as rough graded acreage. Specifically, the available parcels consist of: (1) a 5.69 acre parcel which is pad-ready for a 65,992 square foot building (the "Fifth Third Parcel"); (2) a 4.93 acre parcel which is pad-ready for four buildings (21,000 square feet; 13,124 square feet; 13,140 square feet; and 20,000 square feet); and (3) approximately 79 acres of rough graded land, which includes approximately 14 acres of designated open space. At the time the bankruptcy was filed, there were two buildings on a 2.9 acre parcel, and a 16 acre tract containing rough graded land and designated open space, which were sold pursuant to a § 363 sale for $2,900,000.

The rough graded land (not including the designated open space) is valued at approximately $70,000 per acre, for a total of about $4,550,000, although specific acreage may be worth more or less. The Fifth Third Parcel is valued at approximately $750,000. Each of the four pad-ready units are worth approximately $250,000, for a total of approximately $1,000,000. Thus, the total value of all assets is approximately $6,300,000.

## 2. Liabilities

Below is a listing of Debtor's liabilities and their proposed treatment in the Plan. Debtor reserves the right to object to the claim of any creditor.

I.      Class 1:   Administrative and Priority Fees and Expenses - This class includes the payment of the ongoing post petition fees and expenses, as approved by the Court. Subsection II(E) of the Disclosure Statement lists the professionals who have been authorized for employment in this case. As of July 12, 2011, Barton Law Firm, P.A. has not applied for approval of any post petition fees and expenses.

B. Bayles Mack has received $10,000 in attorney's fees in connection with the closing of the School District Sale. It is anticipated that Mr. Mack will be paid as he provides assistance to the Debtor in connection with future real estate closings.

The Keith Corporation has not received any payment from the Debtor, but it is anticipated that it will be paid a commission in connection with future real estate sales.

The services provided by the approved professionals will continue and will be paid immediately upon approval by the Court.  This class is UNIMPAIRED.

II.    Class 2:  U. S. Trustee Quarterly Fees - This class includes the payment of the quarterly fees required of Chapter 11 Debtors.  Through July 12, 2011, the Debtor has not paid any quarterly fees to the U. S. Trustee because none have become due yet, but $9,750 will be due and will be paid by the Debtor by July 31, 2011.  All quarterly fees will continue to be paid on a current basis.  This class is UNIMPAIRED.

III.    Class 3: Unsecured Priority Claims – There are no known unsecured priority claims.  If it is determined that there are any unsecured priority claims, all post petition obligations to this class will be paid on time as they are due and payable.  This class is UNIMPAIRED.

IV.    Class 4:  Synovus Bank (the "Bank") (Secured Claim) - This class consists of this secured creditor, holding a mortgage secured by a first priority claim against most of the real estate assets of the Debtor, consisting of (1) a 4.93 acre parcel which is pad-ready for four buildings (21,000 square feet; 13,124 square feet; 13,140 square feet; and 20,000 square feet); and (2) approximately 79 acres of rough graded land which includes approximately 14 acres of designated open space (together, the "Synovus Real Estate").  The approximate unpaid balance of this claim is about $3,890,314.  The Bank also holds a second priority lien on a 5.62 acre, pad ready tract on I-77 (the "Fifth Third Parcel"), behind the disputed mortgage of Fifth Third Bank.  This second priority lien originally secured the debt of Jennings Enterprises, but the Bank has agreed to apply any proceeds to which it is entitled from the sale of the Fifth Third Parcel to the debt of the Debtor in lieu of applying it to the debt of Jennings Enterprises.

This creditor will be paid from real estate sales, with quarterly interest payments beginning the first quarter following the Effective Date of the Plan.  As each sale is closed on the Synovus Real Estate, the Bank will receive 75% of the net proceeds of each sale (the "Release Payment").  Net proceeds shall be calculated after payment of all closing expenses, including commissions on the sale, US Trustee fees due as a result of the sale disbursements, taxes, legal fees related to the closing, and other closing costs.  Upon sale of the Fifth Third Parcel, the Bank will receive 50% of the net proceeds, which shall be calculated after payment of the Debtor's legal fees and expenses incurred in connection with its objection to Fifth Third's claim and related litigation, and after payment of all

closing expenses as described above ("Fifth Third Release Payment").  The quarterly interest payments will be 3.5% per annum, payable quarterly, on the last day of the quarter, on the outstanding principal balance as it is reduced from time to time.  Interest payments will begin the first quarter following the Effective Date of the Plan.

The sale of the Property or any portion thereof by the Debtor will be made in the ordinary course of business, and no further order of the Court will be required after confirmation of the Plan in order to allow such sales free and clear of all liens and encumbrances, provided that the Bank receives payment of the Release Payment or Fifth Third Release Payment, as applicable, as set forth herein.  Thus, the Bank cannot object to any sale or refuse to release its lien, provided it is paid the Release Payment or Fifth Third Release Payment, as applicable.  Except as provided herein, the Bank's lien on its collateral will remain intact until it receives the Release Payment and/or the Fifth Third Release Payment as required herein.

Projections for payments related to sales are set forth on **Exhibit A**.  These are projections only, and do not indicate a requirement for a sale of any particular acreage to occur in any particular quarter. In addition, sales might involve any number of acres or portion of acres, and might not sell for the price per acre as listed on the projections.  Actual acreage will depend on the buyer's needs and the price will depend on the particular real estate being sold.  However, the Debtor will not agree to any sale that is less than $60,000 per acre (excluding designated open space) without the Bank's prior approval.  This class is IMPAIRED.

V.    Class 5: Unsecured Non Priority Creditors (Unsecured Claims) - This class includes all unpaid unsecured non priority claims as shown on **Exhibit B,** after final claims objections and allowance.  These claims have not been finalized and the deadline for filing claims has not yet expired, but the maximum total amount in this class is estimated to be approximately $1,219,407. This total includes disputed claims in the approximate amount of $1,041,867, including the disputed claim of Fifth Third Bank in the scheduled amount of $946,850.34.  The Debtor has objected to the claim of Fifth Third Bank and believes that this claim, along with the other disputed claims, will be disallowed.  Thus, the total of all anticipated allowed unsecured claims is believed to be approximately $177,539. Inclusion of a creditor's name or an indication of the amount of the claim is not an indication that the claim is allowed or that the amount is the allowed amount, since the

claims objection process is continuing. All allowed unsecured creditors will be paid a portion of their allowed claims, upon the sale of the real estate, after Class 1, 2, 3, and 4 have been paid in full. The members of this class shall receive a pro rata share of net sale proceeds until all property has been sold or until the allowed claims of this class have been paid in full. Payment will be made on the last day of the quarter in any quarter in which payment is allowed per these provisions. This class is IMPAIRED.

VI. Class 6: R. Shawn Helda and Helda Enterprises International, LLC. This class consists of parties who have made claims against the Debtor by virtue of their membership interest and/or management interest in the Debtor. After payment in full to Class 1, 2, 3, 4, and 5, the net proceeds of any sale of real estate, along with the profits of the Debtor which have accumulated after the other Classes have been paid in full, shall be escrowed for payment to this class, until such time that the escrow balance is $150,000. When such escrow balance is reached, then this class shall be paid, collectively, a lump sum of $150,000. If all marketable Property has been sold and there is no likelihood of additional revenue, and the net remaining proceeds and profits are less than $300,000, then this class shall receive one-half (1/2) of the remaining net profits in lieu of $150,000. Upon payment of the lump sum to this class, all interests of any member of this class in the Debtor, including all interests as member and/or manager of the Debtor, shall terminate with no further recourse to the Debtor. Prior to the termination of Helda as a manager as set forth herein, and notwithstanding any agreement or provision to the contrary, the Jennings shall continue to have the right to manage Gold Hill, without the consent of Helda, until the Debtor's indebtedness to the Bank has been fully satisfied. This class is IMPAIRED.

VII. Class 7: Equity Owners. The owners of the Debtor are as follows:

| | |
|---|---|
| David Jennings | 25% |
| Kathryn Jennings | 25% |
| Helda Enterprises International, LLC | 50% |

Through this Plan, David Jennings and Kathryn Jennings have made and are continuing to make a substantial contribution in the form of infusion of the cash necessary to fund the Chapter 11, and in their continued marketing efforts in order to sell the property for maximum value and fund this plan. This new value is essential to the Debtor's ability to consummate this Plan and make the

13

payments necessary to the creditors. Helda Enterprises International, LLC has not participated during the Chapter 11 pursuant to an agreement among the equity owners, and its equity interest in the Debtor will cease after payment as described under Class 6. This class is IMPAIRED.

### 3. Liquidation Analysis

In the event that the Debtor were subjected to a forced liquidation of all assets, it appears that the unsecured creditors would receive no distribution. While there is potential for recovery above the Bank's lien if the property is sold over time, any foreclosure sale by the Bank would result in the Bank's purchase of the property to the exclusion of all other creditors. Prior to the filing of the bankruptcy, the Bank bid at a foreclosure sale for all of its collateral (the Synovus Real Estate) in the amount of $5,193,000. This included the property which has since been sold, post petition, to the School District for $2,900,000. From this, it can be extrapolated that the Bank would bid $2,293,000 for the remaining property:

$5,193,000 (foreclosure credit bid)
Minus $2,900,000 (value of the property sold to the School District)
$2,293,000

Since the outstanding balance to the Bank is $3,890,314, this would result in no recovery to any other creditors, and the remaining amount owed to the Bank after foreclosure of the Synovus Real Estate based on the above figures would be $1,597,314. The foreclosure of the remaining parcel, the Fifth Third Parcel, would not yield enough to cover the amount due to the Bank, since that parcel's market value is $750,000 (less than the amount remaining due to the Bank, per the above calculations). Thus, there would be no assets available for payment to any other creditors.

The ability to market and sell this property as it was originally conceived is the key to maximization of value and payment of all creditors.

### III. AVOIDANCE ACTIONS

The Debtor has conducted a preliminary analysis of the possible recovery available through litigation for preferential or fraudulent transfers. Based on this analysis, there does not appear to be potential recovery available. However, if any actionable transfers have occurred, the Debtor intends

14

to pursue such transfers to the extent warranted and the proceeds from the recovery of any such litigation will be used to assist with the funding of the Plan.

## IV.  SUMMARY OF PROPOSED PLAN

The complete provisions of the Plan of Reorganization are contained in the plan that is filed simultaneously with this Disclosure Statement and creditors are encouraged to read the Plan in its entirety.  Generally, it provides for the continuing operations of the Debtor, on a more profitable basis.  A detailed set of projections, containing plan payments, is attached as **Exhibit A**. These are projections only, and do not indicate a requirement for a sale of any particular acreage to occur in any particular quarter.  Other than the quarterly interest payments to the Bank and necessary administrative costs and expenses, payments per the Plan are to be made as sales occur.  Sales may be of any acreage or portion of acre, as determined by the needs of the buyer, and may not reflect the price per acre as shown on the projections.  However, the Debtor will not agree to any sale which is less than $60,000 per acre (excluding designated open space) without the prior consent of the Bank.

## V.  FEASIBILITY OF PROPOSED PLAN OF REORGANIZATION

§1129(a)(11) of the Bankruptcy Code requires that in order for a Plan to be confirmed, it must be demonstrated that the Plan is not likely to be followed by a liquidation or the need for further reorganization of the Debtor, or any successor of the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan. The information provided herein demonstrates the modifications and improvements which have occurred which will enable this reorganization to be successful.

## VI.  CONCLUSION

Readers of this Disclosure Statement are directed to the Plan for specific treatment of their particular rights or claims against the Debtor.  The Debtor believes that the provisions of the Plan

satisfy the claims against the Debtor in a manner providing each the maximum value to fairly and equitably satisfy these claims.

RESPECTFULLY SUBMITTED on this the 12th day of July, 2011, at Columbia, South Carolina.

>BARTON LAW FIRM, P.A.
>
>BY: /s/Barbara George Barton, I.D. #1221
>Christine E. Brimm, I.D. #6313
>Attorney for the Debtor
>1715 Pickens Street (29201)
>P. O. Box 12046
>Columbia, SC  29211-2046
>Tele:  (803) 256-6582
>Fax:  (803) 779-0267
>Email:  bbarton@bartonlawsc.com

## GOLD HILL ENTERPRISES, LLC  PLAN PROJECTIONS

|  | 2011 3RD QUARTER | 2011 4TH QUARTER | 2012 1ST QUARTER |
|---|---:|---:|---:|
| **REVENUE** | | | |
| ACREAGE SOLD | 20 | 10 | N/A |
| AVERAGE PRICE PER ACRE SOLD | $ 95,000.00 | $ 70,000.00 | $ - |
| TOTAL GROSS REVENUE | $ 285,000.00 | $ 700,000.00 | $ - |
| LESS EXPENSES ** | $ 65,000.00 | $ 96,875.00 | $ - |
| **TOTAL NET SALES REVENUE** | **$ 220,000.00** | **$ 603,125.00** | **$ -** |
| | | | |
| **PLAN PAYMENTS** | | | |
| SYNOVUS - RELEASE PAYMENTS | $ 165,000.00 | $ 452,343.75 | $ - |
| SYNOVUS - INTEREST (@3.5% APR) | $ - | $ 32,596.50 | $ 28,638.49 |
| FIFTH THIRD RELEASE PAYMENT TO SYNOVUS | | | |
| CLASS 5 (UNSECURED CREDITORS) | | | |
| CLASS 6 (HELDA) | | | |
| **TOTAL PLAN PAYMENTS** | **$ 165,000.00** | **$ 484,940.25** | **$ 28,638.49** |
| | | | |
| **OPERATING EXPENSES** | | | |
| LEGAL FEES | | $ 60,000.00 | $ 30,000.00 |
| TAXES | | $ - | $ 30,500.00 |
| OFFICE & MISC EXPENSES *** | | $ - | $ - |
| **TOTAL OPERATING COSTS** | | **$ 60,000.00** | **$ 60,500.00** |
| | | | |
| **QUARTERLY PROFIT** | **$ 55,000.00** | **$ 58,184.75** | **$ (89,138.49)** |
| **CASH ON HAND** | **$ 55,000.00** | **$ 113,184.75** | **$ 24,046.26** |
| | | | |
| **REMAINING BALANCE TO SYNOVUS** | **$ 3,725,314.00** | **$ 3,272,970.25** | **$ 3,272,970.25** |
| **(Starting balance - $3,890,314.00)** | | | |

** Includes closing, tax and UST
expenses, agent commission(s)

*** Expenses gifted by others                                                                                                           EXHIBIT A-1

**GOLD HILL ENTERPRISES, LLC  PLAN PROJECTIONS**

|  | 2012 2ND QUARTER | 2012 3RD QUARTER | 2012 4TH QUARTER |
|---|---:|---:|---:|
| **REVENUE** | | | |
| ACREAGE SOLD | 10 | N/A | 10 |
| AVERAGE PRICE PER ACRE SOLD | $ 70,000.00 | N/A | $ 70,000.00 |
| TOTAL GROSS REVENUE | $ 700,000.00 | $ 1,728,050.00 | $ 700,000.00 |
| LESS EXPENSES ** | $ 96,875.00 | $ 20,000.00 | $ 96,875.00 |
| **TOTAL NET SALES REVENUE** | **$ 603,125.00** | **$ 1,708,050.00** | **$ 603,125.00** |
| | | | |
| **PLAN PAYMENTS** | | | |
| SYNOVUS - RELEASE PAYMENTS | $ 452,343.75 | $ 1,281,037.50 | $ 452,343.75 |
| SYNOVUS - INTEREST (@3.5% APR) | $ 28,638.49 | $ 24,680.48 | $ 24,680.48 |
| FIFTH THIRD RELEASE PAYMENT TO SYNOVUS | | | |
| CLASS 5 (UNSECURED CREDITORS) | | | |
| CLASS 6 (HELDA) | | | |
| **TOTAL PLAN PAYMENTS** | **$ 480,982.24** | **$ 1,305,717.98** | **$ 477,024.23** |
| | | | |
| **OPERATING EXPENSES** | | | |
| LEGAL FEES | $ 30,000.00 | $ 20,000.00 | $ 10,000.00 |
| TAXES | $ - | $ - | $ - |
| OFFICE & MISC EXPENSES *** | $ - | $ - | $ - |
| **TOTAL OPERATING COSTS** | **$ 30,000.00** | **$ 20,000.00** | **$ 10,000.00** |
| | | | |
| **QUARTERLY PROFIT** | **$ 92,142.76** | **$ 382,332.02** | **$ 116,100.77** |
| **CASH ON HAND** | **$ 116,189.02** | **$ 498,521.04** | **$ 232,289.79** |
| | | | |
| **REMAINING BALANCE TO SYNOVUS** | 2,820,626.50 | 1,539,589.00 | 1,087,245.25 |

\*\* Includes closing, tax and UST expenses, agent commission(s)

\*\*\* Expenses gifted by others                                                                                                 EXHIBIT A-2

**GOLD HILL ENTERPRISES, LLC  PLAN PROJECTIONS**

|  | 2013 1ST QUARTER | 2013 2ND QUARTER |
|---|---:|---:|
| **REVENUE** | | |
| ACREAGE SOLD | 14.93 | 10.62 |
| AVERAGE PRICE PER ACRE SOLD | $ 180,000.00 | $ 84,827.00 |
| TOTAL GROSS REVENUE | $ 887,400.00 | $ 975,000.00 |
| LESS EXPENSES ** | $ 108,119.00 | $ 234,375.00 |
| **TOTAL NET SALES REVENUE** | **$ 779,281.00** | **$ 740,625.00** |
| | | |
| **PLAN PAYMENTS** | | |
| SYNOVUS - RELEASE PAYMENTS | $ 584,460.75 | $ 259,034.50 |
| SYNOVUS - INTEREST (@3.5% APR) | $ 9,513.40 | $ 4,399.36 |
| FIFTH THIRD RELEASE PAYMENT TO SYNOVUS | | $ 243,750.00 |
| CLASS 5 (UNSECURED CREDITORS) | | $ 177,539.00 |
| CLASS 6 (HELDA) | | $ 150,000.00 |
| **TOTAL PLAN PAYMENTS** | **$ 593,974.15** | **$ 834,722.86** |
| | | |
| **OPERATING EXPENSES** | | |
| LEGAL FEES | $ 10,000.00 | $ - |
| TAXES | $ - | $ 8,000.00 |
| OFFICE & MISC EXPENSES *** | $ - | $ - |
| **TOTAL OPERATING COSTS** | **$ 10,000.00** | **$ 8,000.00** |
| | | |
| **QUARTERLY PROFIT** | **$ 175,306.85** | **$ (102,097.86)** |
| **CASH ON HAND** | **$ 407,596.65** | **$ 305,498.78** |
| | | |
| **REMAINING BALANCE TO SYNOVUS** | **$ 502,784.50** | **$ -** |

** Includes closing, tax and UST expenses, agent commission(s)

*** Expenses gifted by others                                                                                         EXHIBIT A-3

## GOLD HILL ENTERPRISES, LLC
## UNSECURED CLAIMS

| CREDITOR | UNDISPUTED | DISPUTED |
|---|---|---|
| Fifth Third Bank | | $ 946,850.34 |
| Alexander Rusak | | Unknown |
| Anthony Aulisio, Jr., CPA | $ 875.00 | |
| Barfield Grading | | $ 64,000.00 |
| CESI | | $ 19,373.05 |
| Harsell & Williams | $ 2,634.00 | |
| Intelligent Technology, Inc. | | $ 351.00 |
| Jennings Enterprises | $ 29,677.46 | |
| John McAllister | | Unknown |
| Kathyrn Jennings | $ 369.66 | |
| Leonard K. Jackson | | Unknown |
| Mack & Mack | $ 36,000.00 | |
| National Corporate Research, LTD | | $ 158.00 |
| Sowell Gray | $ 107,983.24 | |
| The National Auction Group | | Unknown |
| The Paces Foundation, Inc. | | Unknown |
| Valley Crest Landscaping | | $ 11,135.00 |
| TOTAL | $ 177,539.36 | $ 1,041,867.39 |

EXHIBIT B