**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Gold Hill Enterprises, LLC, | ) | Case No. 11-02458-hb |
| | ) | |
| Debtor. | ) | |

**PLAN OF REORGANIZATION**

Filed by the Debtor-in-Possession, Gold Hill Enterprises, LLC
on July 12, 2011

**Table of Contents**

Page

| | | |
|---|---|---|
| Article I | History and Other General Information Relating to the Proposed Plan of Reorganization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| Article II | Plan of Reorganization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| Article III | Classification of Creditors and Parties in Interest and the Provisions of Treatment of Each Class of Creditors and Party in Interest Dealt with by the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| Article IV | Feasibility of Proposed Plan of Reorganization. . . . . . . . . . . . . . . . . . . . . . | 9 |
| Article V | Status of the Debtor After Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| Article VI | Executory Contracts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| Article VII | Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 |
| Article VIII | Post-Confirmation Acts . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 |
| Article IX | Cram-Down for Impaired Creditors Not Accepting the Plan . . . . . . . . . . . . | 11 |
| Article X | Discharge of the Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 |

# PLAN OF REORGANIZATION

The Debtor-in-Possession, Gold Hill Enterprises, LLC ("Gold Hill" or "Debtor") hereby proposes the following Plan of Reorganization ("Plan") pursuant to Chapter 11 of the U. S. Bankruptcy Code.

## ARTICLE I

### History and Other General Considerations Relating to the Plan of Reorganization

1.1.    Background.  The history and background of the Debtor are fully provided in the Debtor's Disclosure Statement (the "Disclosure Statement") and its attached exhibits filed simultaneously with this Plan.  The information in the Disclosure Statement is incorporated herein by reference.

1.2.    Financial Condition of the Debtor.  The data providing the current and historical financial condition of the Debtor are located in the Disclosure Statement.

1.3.    The Debtor's Reorganization Proceedings under Chapter 11.  The information found in the Disclosure Statement provides adequate history as to the proceedings by the Debtor in this reorganization.

1.4.    Definitions.  The following words, terms and definitions shall be used and apply exclusively for this Plan:

1.    The Code is 11 U.S.C. Sections 101, et seq., the "Bankruptcy Code".

2.    The Court shall mean the United States Bankruptcy Court for the District of South Carolina.

3.    The Debtor shall mean Gold Hill Enterprises, LLC.

4.    Chapter 11 shall mean a case being administered under 11 U.S.C. Sections 1101 et seq., for the reorganization of the indebtedness of the Debtor.

5.    The Case shall mean this proceeding under Chapter 11, which commenced as a voluntary petition in this Court on April 14, 2011 (the "Petition Date").

6.    Chapter 7 shall mean a hypothetical case which is administered under 11 U.S.C. Sections 701 et seq., wherein an estate, identical to the Debtor's, with identical assets and liabilities, has its assets liquidated.

7.    The Plan shall mean this Plan of Reorganization of the Debtor under Chapter 11, filed with the Court on July 12, 2011.

8.    Confirmation of this Plan shall be effective when the signed Order Confirming Plan is filed by the Court to implement the proposed Plan, after the Court has found that the Plan: (1) has been accepted by the requisite number of creditors and parties of interest eligible to

vote therefor, (2) is feasible, (3) is fair and equitable, (4) does not unfairly discriminate, and (5) meets all of the other requirements of 11 U.S.C. Section 1123, Section 1126 and Section 1129, and the Order Confirming Plan is entered.  The "Effective Date of Confirmation" for cash distribution purposes as it is referred to in this Plan, however, shall mean forty-five (45) days from the entry of a final Order of Confirmation in this case.

9. Claim shall mean any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, against the Debtor in existence of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, secured, or unsecured.

10. Allowed Claim shall mean each individual creditor's claim or claim of interest whose validity is unchallenged, or if challenged by the Debtor, a claim which is ultimately proven by that claimant and approved by the Court after notice.  Some claims by law can be approved only by the Court for payment, i.e., administrative claims.  The Debtor retains the ability to object to claims regardless of confirmation of the plan and claims treated in the plan will be paid only to the extent they are allowed by the Court.

11. Allowed Secured Claim shall mean an Allowed Claim secured by a lien, security interest, or other charge against or interest in property in which the Debtor has an interest or that is subject to setoff under section 553 of the Code, to the extent of the value (as determined in accordance with section 506(a) of the Code) of the interest of the holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

12. Administrative Expense shall mean a claim for a cost or expense of administration that is allowed pursuant to section 503(b) of the Code and that is entitled to priority pursuant to section 507(a)(1) of the Code, including, but not limited to, obligations incurred after the Petition Date by the Debtor in the ordinary course of its business, claims arising under sections 330 or 331 of the Code and claims for cure payments under section 365(b)(1) of the Code.

13. Governmental Priority Claims shall mean all Allowed Unsecured Claims of government units that are entitled to priority under section 507(a)(8) of the Code.

14. Non-Governmental Priority Claims shall mean all Allowed Unsecured Claims entitled to priority pursuant to any subsection of section 507(a) of the Code except for subsection 507(a)(8).

15. Unsecured Claims shall mean all claims against the Debtors other than Secured Claims, Priority and Administrative Claims, or Claims of Interest.

16. <u>Class of Claims</u> shall mean all types of claims or interests (<u>i.e.</u>, secured, priority, unsecured or interests) which are substantially identical in kind or nature and are grouped together without any unfair discrimination or treatment for payment by this Plan.

17. <u>Impaired</u> <u>Class</u> shall mean a class of claims given, under this Plan, less than the full amount of their filed and approved individual claims or claims where contract rights are modified or compromised by the Plan.

18. <u>Unimpaired</u> <u>Class</u> shall mean a class of claims whose rights are not affected by this Plan, or which is entitled to and shall receive under this Plan full satisfaction of its filed and approved claims as required by the Code. Unimpaired claims are deemed to have accepted this Plan by specific provision of the Code and solicitation of acceptances with respect to such class from the holders of claims or interest of such class is not required.

19. <u>Executory</u> <u>Contracts</u> shall mean all ongoing contracts or agreements not completed as of the Petition Date in which failure to perform by one party would excuse performance by the other party, and include, but are not limited to leases.

20. <u>Acceptance</u>. A specific class of claims has accepted a plan when such plan has been accepted by <u>those voting</u> individual creditors in that class that hold at least two-thirds (2/3) in amount ($'s) and more than one-half (1/2) in number (greater than 50%) of the <u>voting</u> individual allowed claims of that class of creditors. A class of interest has accepted a plan if such plan has been accepted by holders of such interest that hold at least two-thirds (2/3) in the amount of the allowed interest of such class held by holders of such interest (<u>i.e.</u>, number of shares held by shareholders or partners) <u>that have voted</u> in confirmation of such plan. <u>It is important to note that computation in the confirmation voting process is based only upon the total amount of claims actually voting rather than on claims proven and allowed.</u>

Notwithstanding any other provision of this section, a class that is unimpaired under this Plan is deemed by law to have accepted this Plan, and solicitation of acceptances with respect to such class is not otherwise required.

21. <u>Exhibit</u> shall refer to those exhibits attached to the Disclosure Statement.

22. <u>Cash on Hand</u> shall refer to that cash available, on or immediately after confirmation, and which is in the hands of the Debtor, and has been derived from the total operations of the Debtor.

23. <u>Substantial Consummation</u> shall refer to that date and time on which the transfer of all or substantially all of the property proposed by the Plan to be transferred has been achieved; the assumption by the debtor under the Plan of the business or of the management of all or substantially all of the property dealt with by the Plan has been achieved; and, finally, the commencement of the distribution of some payments under the Plan has begun.

24.     <u>Final Consummation</u> shall refer to the date and time at which the execution of all provisions of the Plan, appropriate requirements of the Bankruptcy Code, and applicable supplemental orders issued by the Bankruptcy Court have been fully complied with and accomplished.

25.     <u>Property to be Dealt With by the Plan</u> shall refer to the property which is described in the Disclosure Statement.

26.     The <u>Bank</u> shall refer to Synovus Bank.

27.     Capitalized terms not otherwise defined herein shall be defined as the term is defined in the Disclosure Statement.

**NOTE:**  <u>The defining of the various parties of interest and claimants against this estate in no way imputes any relative priority among them nor is it to be construed to validate or approve any of their claims.</u>

## ARTICLE II
### Plan of Reorganization

The Plan is contained in detail below and specific information should be obtained there. In summary, the Debtor intends to continue the development and marketing of its property, which will allow the profitable completion of the Plan and payments to the allowed claims which would otherwise be unavailable.

## ARTICLE III
### Classification of Creditors and Parties in Interest and the Provisions of Treatment of Each Class of Creditors and Party in Interest Dealt with by the Plan

Below is a listing of Debtor's liabilities and their proposed treatment in the Plan. Debtors reserve the right to object to the claim of any creditor.

I.     <u>Class 1:  Administrative and Priority Fees and Expenses</u> - This class includes the payment of the ongoing post petition fees and expenses, as approved by the Court. Subsection II(E) of the Disclosure Statement lists the professionals who have been authorized for employment in this case. As of July 12, 2011, Barton Law Firm, P.A. has not applied for approval of any post petition fees and expenses.

B. Bayles Mack has received $10,000 in attorney's fees in connection with the closing of the School District Sale. It is anticipated that Mr. Mack will be paid as he provides assistance to the Debtor in connection with future real estate closings.

5

The Keith Corporation has not received any payment from the Debtor, but it is anticipated that it will be paid a commission in connection with future real estate sales.

The services provided by the approved professionals will continue and will be paid immediately upon approval by the Court. This class is <u>UNIMPAIRED</u>.

II.  <u>Class 2: U. S. Trustee Quarterly Fees</u> - This class includes the payment of the quarterly fees required of Chapter 11 Debtors. Through July 12, 2011, the Debtor has not paid any quarterly fees to the U. S. Trustee because none have become due yet, but $9,750 will be due and will be paid by the Debtor by July 31, 2011. All quarterly fees will continue to be paid on a current basis. This class is <u>UNIMPAIRED</u>.

III.  <u>Class 3: Unsecured Priority Claims</u> – There are no known unsecured priority claims. If it is determined that there are any unsecured priority claims, all post petition obligations to this class will be paid on time as they are due and payable. This class is <u>UNIMPAIRED</u>.

IV.  <u>Class 4: Synovus Bank (the "Bank") (Secured Claim)</u> - This class consists of this secured creditor, holding a mortgage secured by a first priority claim against most of the real estate assets of the Debtor, consisting of (1) a 4.93 acre parcel which is pad-ready for four buildings (21,000 square feet; 13,124 square feet; 13,140 square feet; and 20,000 square feet); and (2) approximately 79 acres of rough graded land which includes approximately 14 acres of designated open space (together, the "Synovus Real Estate"). The approximate unpaid balance of this claim is about $3,890,314. The Bank also holds a second priority lien on a 5.62 acre, pad ready tract on I-77 (the "Fifth Third Parcel"), behind the disputed mortgage of Fifth Third Bank. This second priority lien originally secured the debt of Jennings Enterprises, but the Bank has agreed to apply any proceeds to which it is entitled from the sale of the Fifth Third Parcel to the debt of the Debtor in lieu of applying it to the debt of Jennings Enterprises.

This creditor will be paid from real estate sales, with quarterly interest payments beginning the first quarter following the Effective Date of the Plan. As each sale is closed on the Synovus Real Estate, the Bank will receive 75% of the net proceeds of each sale (the "Release Payment"). Net proceeds shall be calculated after payment of all closing expenses, including commissions on the sale, US Trustee fees due as a result of the sale disbursements, taxes, legal fees related to the closing, and other closing costs. Upon sale of the Fifth Third Parcel, the Bank will receive 50% of the net proceeds, which shall be calculated after payment of the Debtor's legal fees and expenses incurred in connection with its objection to Fifth Third's claim and related litigation, and after payment of all

closing expenses as described above ("Fifth Third Release Payment").  The quarterly interest payments will be 3.5% per annum, payable quarterly, on the last day of the quarter, on the outstanding principal balance as it is reduced from time to time.   Interest payments will begin the first quarter following the Effective Date of the Plan.

The sale of the Property or any portion thereof by the Debtor will be made in the ordinary course of business, and no further order of the Court will be required after confirmation of the Plan in order to allow such sales free and clear of all liens and encumbrances, provided that the Bank receives payment of the Release Payment or Fifth Third Release Payment, as applicable, as set forth herein.  Thus, the Bank cannot object to any sale or refuse to release its lien, provided it is paid the Release Payment or Fifth Third Release Payment, as applicable.  Except as provided herein, the Bank's lien on its collateral will remain intact until it receives the Release Payment and/or the Fifth Third Release Payment as required herein.

Projections for payments related to sales are set forth on **Exhibit A**.  These are projections only, and do not indicate a requirement for a sale of any particular acreage to occur in any particular quarter. In addition, sales might involve any number of acres or portion of acres, and might not sell for the price per acre as listed on the projections.  Actual acreage will depend on the buyer's needs and the price will depend on the particular real estate being sold.  However, the Debtor will not agree to any sale that is less than $60,000 per acre (excluding designated open space) without the Bank's prior approval.  This class is <u>IMPAIRED</u>.

V.    <u>Class 5: Unsecured Non Priority Creditors (Unsecured Claims)</u> - This class includes all unpaid unsecured non priority claims as shown on **Exhibit B,** <u>after final claims objections and allowance.</u>  These claims have not been finalized and the deadline for filing claims has not yet expired, but the maximum total amount in this class is estimated to be approximately $1,219,407. This total includes disputed claims in the approximate amount of $1,041,867, including the disputed claim of Fifth Third Bank in the scheduled amount of $946,850.34.  The Debtor has objected to the claim of Fifth Third Bank and believes that this claim, along with the other disputed claims, will be disallowed.  Thus, the total of all anticipated allowed unsecured claims is believed to be approximately $177,539. Inclusion of a creditor's name or an indication of the amount of the claim is not an indication that the claim is allowed or that the amount is the allowed amount, since the claims objection process is continuing. All allowed unsecured creditors will be paid a portion of their allowed claims, upon the sale of the real estate, after Class 1, 2, 3, and 4 have been paid in full.

The members of this class shall receive a pro rata share of net sale proceeds until all property has been sold or until the allowed claims of this class have been paid in full. Payment will be made on the last day of the quarter in any quarter in which payment is allowed per these provisions. This class is IMPAIRED.

VI. Class 6: R. Shawn Helda and Helda Enterprises International, LLC. This class consists of parties who have made claims against the Debtor by virtue of their membership interest and/or management interest in the Debtor. After payment in full to Class 1, 2, 3, 4, and 5, the net proceeds of any sale of real estate, along with the profits of the Debtor which have accumulated after the other Classes have been paid in full, shall be escrowed for payment to this class, until such time that the escrow balance is $150,000. When such escrow balance is reached, then this class shall be paid, collectively, a lump sum of $150,000. If all marketable Property has been sold and there is no likelihood of additional revenue, and the net remaining proceeds and profits are less than $300,000, then this class shall receive one-half (1/2) of the remaining net profits in lieu of $150,000. Upon payment of the lump sum to this class, all interests of any member of this class in the Debtor, including all interests as member and/or manager of the Debtor, shall terminate with no further recourse to the Debtor. Prior to the termination of Helda as a manager as set forth herein, and notwithstanding any agreement or provision to the contrary, the Jennings shall continue to have the right to manage Gold Hill, without the consent of Helda, until the Debtor's indebtedness to the Bank has been fully satisfied. This class is IMPAIRED.

VII. Class 7: Equity Owners. The owners of the Debtor are as follows:

| | |
|---|---|
| David Jennings | 25% |
| Kathryn Jennings | 25% |
| Helda Enterprises International, LLC | 50% |

Through this Plan, David Jennings and Kathryn Jennings have made and are continuing to make a substantial contribution in the form of infusion of the cash necessary to fund the Chapter 11, and in their continued marketing efforts in order to sell the property for maximum value and fund this plan. This new value is essential to the Debtor's ability to consummate this Plan and make the payments necessary to the creditors. Helda Enterprises International, LLC has not participated during the Chapter 11 pursuant to an agreement among the equity owners, and its equity interest in the Debtor will cease after payment as described under Class 6. This class is IMPAIRED.

## ARTICLE IV

### Feasibility of Proposed Plan of Reorganization

Section 1129(a)(11) of the Bankruptcy Code requires that in order for a Plan to be confirmed, it must be demonstrated that the Plan is not likely to be followed by a liquidation or the need for further reorganization of the Debtors, or any successor of the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan. Based upon the information provided in the Disclosure Statement and this Plan, the Debtor believes that the payments contained in the Plan are feasible and that they constitute the best method of maximizing payment of the allowed claims in this bankruptcy.

## ARTICLE V

### Status of the Debtor After Confirmation

From and after Confirmation of this Plan, the Debtor is exonerated from any and all claims not filed by a creditor or claimant of interest against the Debtor prior to the date set by this Court. The reorganized Debtor will, from and after Confirmation of this Plan, be indebted for, and obligated to pay, only those liabilities and obligations set forth in Article III of this Plan, and only those that have been allowed or modified pursuant to this Plan, or pursuant to claims objections filed and determined subsequent to Confirmation of this Plan. As noted hereinabove, the Debtor retains the right to object to claims subsequent to confirmation.

Any defaults whatsoever, with respect to any such indebtedness or obligations, or in the terms and conditions thereof, which are or may be based on events, facts or occurrences taking place on or before the date of Confirmation, lapse of time, or both, would take place or be deemed to take place on or before such date and shall be deemed to have been waived and shall not thereafter be a basis for the exercise by any person for any right or remedy whatsoever, as a creditor or claimant against the Debtor.

## ARTICLE VI

### Executory Contracts

The Debtor is unaware of any Executory Contracts other than the ones described in the Disclosure Statement and specifically treated by this Plan. The Debtor had a pre petition development contract with Corinthian International, Inc. ("Corinthian"), but this contract was breached by Corinthian prior to the bankruptcy filing and was terminated pre petition. Also pre petition, the Debtor reached a settlement agreement in the Helda Litigation with Helda Enterprises International, LLC ("HEI") and Helda for their removal as member and manager, respectively, from

the Company. The settlement agreement has not been consummated. However, HEI, Helda, and the Jennings entered into a Resolution and Amendment to the Operating Agreement of Gold Hill prior to the bankruptcy filing ("Gold Hill Resolution") which gave the Jennings the right to manage Gold Hill, such that Helda's consent is not required for management decisions unless Gold Hill enters into a contract for the sale of property for less than $60,000 per acre. The management by the Jennings shall continue upon these terms until the indebtedness to the Bank and Fifth Third, as applicable, have been satisfied.

Pre petition, the Debtor had a contract for sale with Fort Mill School District No. 4, which contract was fulfilled with the sale that was approved by the Bankruptcy Court on April 22, 2011.

The Debtor rejects all executory contracts, with the exception of the Gold Hill Resolution.

## ARTICLE VII
## Jurisdiction

7.1 <u>Retention of Jurisdiction</u>. The Court shall retain jurisdiction over the reorganized Debtor, its property, and all other parties appearing in the reorganization proceeding as provided by this Plan or by Order of the Court. The Court may authorize the Debtor to examine, copy and produce the Debtor's books, records and papers for the purposes of (i) determining all claims that have been asserted against the Debtor, or the Debtor's estate; and (ii) carrying out and giving effect to any and all provisions of the Plan and the Order Confirming Plan; and the Court shall retain jurisdiction as provided in the Bankruptcy Code until entry of the final decree discharging the Debtor in the reorganization proceeding.

7.2    <u>Prosecution and Defense of Claims</u>. The Debtor shall retain full power after Substantial Consummation to prosecute and defend any causes of action or proceedings existing at Substantial Consummation by or against it, or resulting from the administration of the estate of the Debtor or resulting from any other claim by or against the Debtor or its assets, or arising prior to or existing before Substantial Consummation, including collection of outstanding accounts receivable. The Debtor may use the services of their attorney and accountants in the prosecution or defense of such claims, and shall have full power, subject to the approval of the Court, to employ, retain and replace special counsel to represent them in the prosecution or defense of any action, and to discontinue, compromise, or settle any action or proceeding, or adjust any claim. The net proceeds received from any such litigation by the Debtor shall be used for payment of the claims of the Debtor's estate.

## ARTICLE VIII

### Post-Confirmation Acts

8.1    The Debtor, and its agents, shall perform all acts necessary to complete and consummate this Plan, to include:

    a.  Prosecution of all claims against third parties and claims challenges filed against the Debtor by third parties;

    b.  Execution and filing of all legal documents required; and

    c.  Performing any and all functions required by the Code.

8.2    The Debtor will file its Application for Final Decree, Final Report and Report of Substantial Consummation, as prescribed by the Order of Confirmation of the Plan.

## ARTICLE IX

### "Cram Down" for Impaired Creditors Not Accepting the Plan

In respect to any class of creditors impaired but not accepting the plan by the requisite majority in number and two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interest that is impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.

## ARTICLE X

### Discharge of the Debtor

The entry of an Order Confirming Plan acts as a discharge of any and all liabilities of the Debtor that are dischargeable under Section 1141 of the Bankruptcy Code.

RESPECTFULLY SUBMITTED on this the 12th day of July, 2011, at Columbia, South Carolina.

                        BARTON LAW FIRM, P.A.

                        BY:    /s/Barbara George Barton, I.D. #1221
                                Christine E. Brimm, I.D. #6313
                                Attorney for the Debtor
                                1715 Pickens Street (29201)
                                P. O. Box 12046
                                Columbia, SC  29211-2046
                                Tele:  (803) 256-6582
                                Fax:  (803) 779-0267
                                Email:  bbarton@bartonlawsc.com