**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Gold Hill Enterprises, LLC, | ) | Case No. 11-02458-hb |
| | ) | |
| Debtor. | ) | |

**ADDENDUM TO DISCLOSURE STATEMENT**

Gold Hill Enterprises, LLC ("Debtor"), the Debtor herein, hereby modifies the Disclosure Statement filed on July 12, 2011, as follows:

**The following amendments are made by the Debtor to supplement information in the Disclosure Statement[1]:**

**ARTICLE II**

**The following is added to Subsection D (employment of professionals):**

Robert Palmer & Associates has now been approved as accountant for the Debtor.

In addition, the Debtor filed an application for approval of K. Todd Phillips and the Firm of Hartsell and Williams, P.A. as special counsel for the Debtor, on August 10, 2011. The application is pending approval by the Court as of September 6, 2011.

**The following language replaces Subsection E(1): (the amended language is in bold)**

This is a single asset real estate case. The real estate consists of a mixed-use development which contains some pad-ready parcels as well as rough graded acreage. Specifically, the available parcels consist of: (1) a 5.69 acre parcel which is pad-ready for a 65,992 square foot building (the "Fifth Third Parcel"); (2) a 4.93 acre parcel which is pad-ready for four buildings (21,000 square feet; 13,124 square feet; 13,140 square feet; and 20,000 square feet); and (3) approximately 79 acres of rough graded land, which includes approximately **21 acres** of designated open space. At the time the bankruptcy was filed, there were two buildings on a 2.9 acre parcel, and a 16 acre tract

---

[1] Capitalized words not otherwise defined herein are as defined in the Disclosure Statement.

containing rough graded land and designated open space, which were sold pursuant to a § 363 sale for $2,900,000.

The rough graded land (not including the designated open space) is valued at approximately $70,000 **or more** per acre, for a total of about **$4,560,000**, although specific acreage may be worth more or less. The Fifth Third Parcel is valued at approximately $750,000. Each of the four pad-ready units are worth approximately $250,000, for a total of approximately $1,000,000. Thus, the total value of all assets is approximately **$6,310,000**.

**Subsection E(2) (Liabilities):**

**The following is added to Subsection (I) (Class 1):**

As of September 6, 2011, Barton Law Firm, P.A. has been approved for post-petition fees and expenses in the amount of $65,858.82. This has been partially paid by N. Kathryn Jennings, in the amount of $30,000, as disclosed in the Supplemental Rule 2016 Disclosure filed on May 10, 2011. Of these approved fees, $35,858.82 remains unpaid.

**The following amendment is hereby made to Exhibit A attached to the Disclosure Statement:**

In the Projections for 2013 1st Quarter, the exhibit states that the acreage sold is 14.93. This number should be 4.93. All other numbers for the 2013 1st Quarter projections are correct.

**The following amendments are made by the Debtor at the request of Synovus Bank:**

Section II(A): The Bank has requested that certain information be added to the Disclosure Statement. The information in Addendum A, attached hereto, is incorporated into the Disclosure Statement at the Bank's request. The Debtor does not agree with or adopt the information contained in Addendum A, but makes the information available for review.

**The following amendments are made by the Debtor at the request of HEI and Helda:**

Sections II(A), (B), and (C): Helda and HEI have requested that certain information be added to the Disclosure Statement. The information in Addendum B, attached hereto, is incorporated into the

Disclosure Statement at Helda's and HEI's request. The Debtor does not agree with or adopt the information contained in Addendum B, but makes the information available for review.

**The following amendments are made by the Debtor at the request of Fifth Third Bank:**

Section II(B): Debtor has received $3,824.11 post-petition for necessary expenses as a gift from Jennings Enterprises, which was for payment of essential insurance, utilities, landscaping fees, and operating expenses. This is reflected in the monthly operating reports and specifically itemized. In addition, N. Kathryn Jennings placed $30,000 in a retainer account with Barton Law Firm, P.A., for payment of attorneys' fees for Gold Hill, as disclosed in Debtor's Supplemental Rule 2016 Disclosure filed on May 10, 2011. This is being used to pay a portion of the attorneys' fees recently approved in this case. All gift amounts have been specifically noted on the monthly operating reports filed with the Court, and all future gifts will continue to be specifically noted on the monthly operating reports.

Section II(C): The settlement agreement between HEI, Helda, and the Debtor was not reduced to a formal writing, but was informally reached with the parties through email correspondence between their counsel. David Jennings, HEI, Helda, and N. Kathryn Jennings executed the Gold Hill Resolution on March 31, 2011, which, in part, describes the terms of the settlement agreement reached among the parties and that such terms included the transfer of 10 acres of real property to Helda. The 10 acres were never specifically identified, and Debtor has not deeded the 10 acres to Helda, nor has the Debtor paid to Helda any amount of the $150,000 contemplated by the settlement agreement. The Plan proposed by the Debtor does not contemplate the transfer of 10 acres to Helda. The settlement agreement is being rejected in the proposed Plan.

Section II(E)(1): The sources for the valuations contained in the Disclosure Statement are David Jennings and N. Kathryn Jennings, who are the principals of the Debtor, as well as the opinion of Chris Berry, whose company The Keith Corporation has been employed by the Debtor as marketing and listing agent for the Debtor. David Jennings and N. Kathryn Jennings are familiar with the property, as it was originally owned by their parents, then by them through their partnership Jennings Enterprises. They are familiar with the real estate and the general real estate market in the

area, having lived in the area their entire lives and having had numerous discussions with brokers, real estate agents, and appraisers over the years. Chris Berry is a licensed broker in North and South Carolina, and is an active member in the commercial real estate community and a participant on several boards, including the Charlotte Region Commercial Board of Realtors. Mr. Berry is very familiar with the area that includes the Debtor's property, which is just south of Charlotte, North Carolina.

Section II(E)(2): Debtor has commenced an adversary proceeding against Fifth Third Bank. Fifth Third Bank is defending the adversary proceeding. Should Fifth Third Bank prevail in the adversary proceeding and it is determined that Fifth Third Bank's mortgage is a valid lien, Debtor will treat Fifth Third Bank's claim as an undersecured claim. In that event only, Fifth Third Bank's secured claim will be treated in Class X. In that event only, the secured portion will be paid out of the proceeds from the sale of the Fifth Third Parcel after payment of senior liens and taxes, and the Bank will not receive any payment from such sale. In that event only, the unsecured portion will be treated with Class 5 as an Unsecured Claim. Fifth Third contends that should it be determined that Fifth Third Bank does not have a valid lien, but that it otherwise has a valid unsecured claim against the Debtor, then such valid unsecured claim will be treated as part of Class 5. The Debtor disagrees that Fifth Third Bank has a valid claim at all. Fifth Third Bank contends that any lien avoided is to be preserved for the benefit of the estate pursuant to 11 U.S.C. §551 and not be used for the benefit of any other secured creditors. The Debtor disagrees. Fifth Third Bank craves reference to the pleadings filed in the adversary proceeding including the Debtor's adversary complaint and Fifth Third Bank's Amended Answer and Third Party Complaint. Fifth Third Bank reserves all rights to contest the treatment in the Plan.

Exhibit A: At Fifth Third Bank's request, the Debtor discloses that the projections were prepared by David Jennings, with the assistance of Chris Berry, based on their familiarity with the property, the general market in the area, and interest from potential purchasers. Chris Berry is a licensed broker in North and South Carolina, and is an active member in the commercial real estate community and a participant on several boards, including the Charlotte Region Commercial Board of Realtors and the National Association of Realtors. Mr. Berry is very familiar with the area that includes the Debtor's property, which is just south of Charlotte, North Carolina. He has been in the commercial real estate

business in the Charlotte area since 1998. David Jennings has lived in the Fort Mill area his entire life and has been familiar with the subject property throughout his entire lifetime.

Other than these changes, all provisions of the Disclosure Statement as filed on July 12, 2011, remain unchanged.

RESPECTFULLY SUBMITTED on this the 7th day of September, 2011, at Columbia, South Carolina.

BARTON LAW FIRM, P.A.

BY:  /s/Barbara George Barton, I.D. #1221
Christine E. Brimm, I.D. #6313
Attorney for the Debtor
1715 Pickens Street (29201)
P. O. Box 12046
Columbia, SC  29211-2046
Tele:  (803) 256-6582
Fax:  (803) 779-0267
Email:  bbarton@bartonlawsc.com

REQUESTED LANGUAGE
FOR INSERTION IN DEBTOR'S DISCLOSURE STATEMENT
IN RE GOLD HILL ENTERPRISES, LLC
CLIENT: NBSC, A DIVISION OF SYNOVUS
CASE NO. 11-02458-HB

Secured creditor NBSC, a division of Synovus Bank, successor in interest by merger with The National Bank of South Carolina ("NBSC") has filed an objection to the Debtor's Disclosure Statement (the "Objection") on the following grounds: (1) the Disclosure Statement does not provide adequate information as required by Section 1125; (2) the proposed plan in the Disclosure Statement is not confirmable on its face; and (3) the Disclosure Statement contains inaccurate and misleading statements regarding certain pre-petition matters.

After consultation with Debtor's counsel and in an effort to resolve the Objection in an expeditious and efficient manner, the parties have agreed as follows regarding the Objection. While the Debtor is not agreeing to, or otherwise waiving any rights regarding the matters set forth below, the Debtor has agreed to insert the following language into the Disclosure Statement:

NBSC hereby reserves its objections related to confirmation issues, which will be addressed at the hearing on confirmation of the Debtor's proposed Plan of Reorganization (the "Plan"). The Debtor and NBSC agree to disagree on whether the Disclosure Statement contains adequate information, and NBSC reserves all rights regarding those issues.

NBSC's Objection also raised issues regarding what NBSC feels is inaccurate and misleading statements regarding certain pre-petition matters. In support of its Objection, NBSC submits the following statement:

In Section II(A)(ii) of the Disclosure Statement, the Debtor references an auction that took place in or around summer/fall of 2009 (the "Auction"). The Debtor alleges that NBSC "... knew about the proposed auction and indicated it would release the parcels to the winning bidders." The Debtor goes on to state that David and Katherine Jennings were unaware that Sean Helda had changed the auction of several parcels from "reserve" to "absolute", which removed the minimum pricing on certain parcels. As a result, the winning bids were extremely low (averaging around $4,700 per acre) and the "Bank refused to release the parcels." *See* Disclosure Statement at Section II(A)(ii) at Page 5. These statements are inaccurate. NBSC was aware of the Auction and had informed Gold Hill and the Jennings personally of the conditions that NBSC would require to release any lots sold in the Auction. Gold Hill and its principals were all aware of the requirements needed by NBSC in order to obtain lot releases. The conditions were not complied with and consequently NBSC did not release the lots sold at the Auction.

The Debtor also alleges that NBSC "indicated it would work with Gold Hill if Helda were removed as manager." But that subsequently NBSC refused to give its consent to the

settlement reached between the Jennings and Helda to remove Sean Helda from Gold Hill. *See* Disclosure Statement at Section II(A)(ii) at Page 5. This is inaccurate. The operating agreement that the Jennings entered into with Helda in forming Gold Hill gave Sean Helda essentially a veto over every action taken by Gold Hill. Once the Jennings and Helda were not in agreement as to the management of Gold Hill, it became impossible for Gold Hill to move forward with a united front, due to the structure of the Operating Agreement that the Jennings had approved when they formed Gold Hill. NBSC made it clear to the Debtors that, in order to work to resolve the default issues as to the loans with NBSC, Gold Hill would have to resolve its problems and speak with a united voice. The Jennings did initiate litigation against Helda to attempt to remove him from Gold Hill, and a proposed settlement was apparently agreed to by the Jennings and Helda. However, the settlement would have required NBSC to release certain land to Helda, and contribute or free up funds to pay Helda, all while Helda, Gold Hill and the Jennings personally owed NBSC a great deal of money. NBSC, within its discretion, refused to agree to the payment of funds and/or release of its collateral to Sean Helda.

Lastly, the Debtor includes some inaccurate and misleading statements regarding NBSC's refusal to approve the School District Sale prior to the bankruptcy. What the Debtor has failed to mention is that the Debtor's proposal regarding the School District Sale would have required NBSC to give the Debtor an additional 2-3 years to develop the remaining Property and requested forbearance from NBSC during that time in exercising its rights as to the Property. While NBSC did not have substantial objections to the School District Sale itself, it was the Debtor's inability to present a feasible plan regarding the resolution of the remaining loan balance that made the proposal unacceptable to NBSC.

ITEMS WHICH R. SHAWN HELDA AND HELDA ENTERPRISES INTERNATIONAL, LLC MAINTAIN SHOULD BE CORRECTED WITH REGARD TO THE DISCLOSURE STATEMENT FILED BY GOLD HILL ENTERPRISES, LLC ON JULY 12, 2011

R. Shawn Helda and Helda Enterprises International, LLC (collectively, "Helda") maintain that the following corrections should be made to the Disclosure Statement (the "DS") filed by Gold Hill Enterprises, LLC ("GHE") on July 12, 2011:

1. On page 4 of the DS, in the second paragraph under subsection ii, Helda would show that (a) the "global challenges" were not exacerbated by the management structure of GHE; (b) the actions of the company required management committee approval; (c) the Jennings were not involved in the sale of the real estate, which was directed by the management committee; and (d) the real estate was not priced too high for the market, and GHE had contracts at the prices established with the broker's and the Jennings' knowledge.

2. On page 5 of the DS, in the first paragraph, Helda would show that the statements describing the auction are inaccurate. As a correction, Helda would show that the Jennings and the GHE management committee authorized reserves one month prior to the auction, and they signed authorization at the auction.

3. On page 5 of the DS, in the third paragraph, denies the accuracy of the sentence which states, "The Jennings negotiated a resolution with the Bank which included the cross-collateralization of the property, but Helda would not agree." Helda would show that David Jennings did not agree to the proposed resolution.

4. On page 7 of the DS, in the first paragraph, in regard to the loan with Fifth Third Bank, and the assertion that the documents were not properly authorized, Helda is informed and believes that the loan documents are signed by the Jennings.

5. On page 7 of the DS, in the first paragraph under section B, Helda denies that a change in management was necessary for GHE to proceed, and Helda would show that the change in management did not enable GHE to avoid prior complications under the management structure because the management structure was not the problem. The problem was the effect of the real estate recession on the market for the property.

6. On page 9 (as well as anywhere else the assertion is made), under section C, Helda denies that Corinthian International, Inc. or Helda breached a contract or agreement with GHE.

7. Helda has not agreed to accept the treatment proposed for Helda in the Plan of Reorganization (the "Plan") filed by GHE, which is summarized in the DS. However, Helda will address his objections to the Plan during the period for objections to the Plan.

ADDENDUM B